**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

NAOMI RUTH STURGILL,　　　　　　　　　　　　　Case No. 1:18-cv-607

　　　　Plaintiff,　　　　　　　　　　　　　　　　　　Black, J.
　　　　　　　　　　　　　　　　　　　　　　　　　　Bowman, M.J.
　　v.

COMMISSIONER OF SOCIAL SECURITY,

　　　　Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Naomi Ruth Sturgill seeks judicial review of the agency's final decision that she is not disabled, and therefore not entitled to Supplemental Security Income (SSI) and Widow's Insurance Benefits. Proceeding through counsel, Plaintiff presents four claims of error, all of which Defendant disputes. For the reasons explained below, I conclude that the ALJ's finding of non-disability should be REVERSED and REMANDED for an immediate award of benefits because it is not supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

This is Plaintiff's second application for SSI Benefits. In the first application, the ALJ issued a fully favorable decision in March 2006.[1] However, her benefits ceased in June 2009 when her spousal income exceeded the limitations allowed by the SSI program (Tr. 246, 566). Plaintiff's spouse died on December 29, 2014.

---

[1] The ALJ found Plaintiff was unable to perform sustained, competitive work activity of any nature, including sedentary work, because she was limited to low stress tasks with no production quotas, no requirement to maintain concentration on a single task for longer than 15 minutes at a time and no exposure to the general public. (Tr. 78).

1

On February 4, 2015, Plaintiff filed a new application for Supplemental Security Income benefits and Widow's Benefits. (Tr. 221-231). The Social Security Administration denied Plaintiff's claims initially and upon reconsideration. (Tr. 138-155). Plaintiff then requested a hearing before an administrative law judge (ALJ). (Tr. 157-159). On July 27, 2017, ALJ Thomas McNichols held a hearing in which he heard testimony from Plaintiff, vocational expert, Eric Pruitt, and Plaintiff's case manager, Angela Duncan. On July 13, 2018, the ALJ denied Plaintiff's application. (Tr. 7-27). Plaintiff filed a request for review with the Social Security Administration Appeals Council on April 16, 2018. (Tr. 214-220). On July 13, 2018, the Appeals Council denied further review. (Tr. 1-6). Plaintiff now seeks judicial review of the denial of her application for benefits.

Plaintiff was 54 years old on the date of the ALJ's decision. (Tr. 33). She has a 10th grade education and no past relevant work. (Tr. 216). Plaintiff testified that she is able to read newspapers, but unable to understand what she reads. (Tr. 34). Plaintiff also testified that her husband passed away and she lives in a house with her two brothers. (Tr. 33-34).

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "a seizure disorder; sensorineural hearing loss; residual effects status-post right wrist fracture; asthma; anxiety; and depression. (Tr. 13). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. The ALJ determined that Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations:

> (1) no climbing ladders, ropes, or scaffolds; (2) no work around hazards, such as unprotected heights or dangerous machinery; (3) no driving of automotive

equipment; (4) limited to performing jobs in which she would be exposed to no more than moderate level background noise, such as that found in a department store or grocery store; (5) no jobs requiring telephone communication; (6) no concentrated exposure to temperature extremes or respiratory irritants; (7) limited to unskilled, simple, and repetitive tasks; (8) occasional contact with coworkers and supervisors; (9) no public contact; (10) no fast-paced production work or jobs that involve strict production quotas; and (11) limited to jobs that involve very little, if any, change in the job duties or work routine from one day to the next.

(Tr. 15).

Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that she can perform, including such jobs as a machine feeder, polisher/buffer, and a conveyor feeder (Tr. 20). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by: 1) finding claimant did not meet/equal Listing 12.06b, 2) weighing the opinion evidence of record, 3) not adopting the prior ALJ decision, and 4) affording little weight to the witness testimony of Angela Duncan, claimant's case manager. The undersigned finds Plaintiff's first and third assignments of error to be dispositive, thereby requiring remand.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition

of the term "disability" is essentially the same for both DIB and SSI.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.*  (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner

4

determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**B. The ALJ's decision is not supported by Substantial evidence**

Upon careful review, the undersigned finds that the ALJ erred in failing to give controlling weight to the findings of Plaintiff's therapist, Ms. Tupa and also erred in failing to adopt the prior ALJ's decision.

In evaluating the opinion evidence, "[t]he ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley v. Commissioner of Social Sec.*, 581

5

F.3d 399, 406 (6th Cir.2009) (quoting *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir.2004). If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician. *Wilson*, 378 F.3d at 544; see also 20 C.F.R. § 404.1527(d)(2).

In weighing differing medical opinion evidence, an ALJ considers the factors set forth in 20 C.F.R. § 404.1527(d)(2). These factors include: "(1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion, with respect to relevant evidence such as medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician rendering the opinion; and (6) any other factor raised by the applicant." *Meece v. Barnhart*, 192 Fed. Appx. 456, 461 (6th Cir.2006) (citing 20 C.F.R. §§ 404.1527(d)(2)-(d)(6)).

More weight is generally given to an opinion offered by a medical source who has examined the claimant over an opinion offered by a medical source who has not examined the claimant. 20 C.F.R. § 404.1527(d)(1). More weight is given to opinions supported by "relevant evidence" such as "medical signs and laboratory findings[.]" 20 C.F.R. § 404.1527(d)(3). Further, more weight is given to those medical opinions that are "more consistent ... with the record as a whole[.]" 20 C.F.R. § 404.1527(d)(3).

In addition to "medical source opinions," opinions from "other sources" can be used to establish the severity of a claimant's impairment and establish how impairments affect

6

a claimant's ability to work. 20 C.F.R. § 404.1513(d). "Other sources" include medical sources such as nurse practitioners that do not qualify as "acceptable medical sources" under the regulations. *Id.* Although "other medical sources" who have treated a claimant are not entitled to controlling weight like a treating physician or psychologist are, "other sources" may be entitled to *more* weight than "acceptable medical sources" under the unique circumstances of a given case. SSR 06–03p, 2006 WL 2329939, at *5 (Aug. 9, 2006). In fact, the opinions of "other sources," such as nurse practitioners, may even be given more weight than a *treating* physician if the "other sources" have seen the claimant more frequently than the "acceptable sources" and have provided better explanations for their opinions. *Id.*

ALJs weigh the opinions of "other sources" using the factors set forth in 20 C.F.R. § 404.1527(c), *i.e.*, "how long the source has known the individual, how frequently the source has seen the individual, how consistent the opinion of the source is with other evidence, how well the source explains the opinion, and whether the source has a specialty or area of expertise related to the individual's impairment." *Williamson v. Comm'r of Soc. Sec.*, No. 1:14–cv–731, 2016 WL 255033, at *8 (S.D. Ohio Jan. 20, 2016); *see also* 20 C.F.R. § 404.1527(c). ALJs should "explain the weight given" such opinions, "or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning, when such opinions may have an effect on the outcome of the case." *Williamson*, at *8.

Here, in July 2017, Ms. Tupa completed a "Mental Impairment Questionnaire" form wherein she opined, in part, that Plaintiff had "severe" limitations in mental functioning, including in: the ability to understand and remember detailed instructions; the ability to

7

maintain attention and concentration for extended periods; restriction in activities of daily living; and difficulties in maintaining concentration, persistence or pace. (Tr. 1435-36). The form defined a "severe" limitation as "not able to perform designated task or function on regular, reliable, and sustained schedule." (Tr. 1435). Ms. Tupa also opined that Plaintiff had "moderately severe" limitations in other areas of mental functioning. (Tr. 1435-36). Ms. Tupa further opined that Plaintiff would miss more than four days of work per month. (Tr. 1437).

In formulating Plaintiff's RFC, the ALJ gave little weight to Ms. Tupa's opinions. The ALJ noted that Ms. Tupa is not considered acceptable medical sources under the regulations. (Tr. 219). See 20 C.F.R. § 404.1513(d); *Engebrecht v. Comm'r of Soc. Sec.,* 572 F. App'x 392, 399 (6th Cir.2014) (a therapist—is not properly classified as an "acceptable medical source" opinion but is an "other source" opinion); See also 20 C.F.R. § 404.1513 (1997). The ALJ further explained that Ms. Tupa's findings were not supported by the overall longitudinal objective evidence of record. (Id.). See 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"). For example, the ALJ noted that Dr. Baula, a psychiatrist at Community Behavioral Health, recently found Plaintiff had normal mood and thought content, and opined she was doing ok with mostly controlled anxiety (Id., citing 1085-92). The ALJ also considered that other treatment notes indicated that Plaintiff had good fund of knowledge and normal comprehension. (Id., citing 1279, 1284). The ALJ further noted that Ms. Tupa did not explain why she believed Plaintiff would miss more than four days of work per month, or what would cause Plaintiff to miss work. (Id.)

8

Plaintiff treated with Ms. Tupa for about eight months leading up to the completion of the medical source statement and saw her for at least six individual therapy sessions. (Tr. 1134, 1139, 1154; 1378, 1395, 1416). As an LPC, Ms. Tupa is a licensed professional counselor trained to work with individuals in treating mental, behavioral and emotional problems and disorders. Her medical opinion is well supported and consistent with the records as a whole. In this regard, Ms. Tupa's treatment notes included the following clinical findings: flight of ideas/disordered thoughts (Tr. 620, 870, 895, 1134, 1154, 1421); difficulty following along (Tr. 833, 849, 1115, 1118, 1158, 1167, 1174, 1198, 1204, 1236, 1349, 1401, 1408); difficulty focusing (Tr. 838, 849, 852, 915, 935, 944, 967, 1349); difficulty processing thoughts and questions (Tr. 836, 849, 1115, 1118, 1158, 1186, 1198, 1204, 1236, 1257, 1353, 1366, 1375, 1378, 1408) and difficulty comprehending information (Tr. 911, 1236, 1351, 1375, 1395).

Ms. Tupa further noted that Plaintiff struggles to maintain focus, scheduling and comprehension in general; frequently misinterprets the intention of others and has difficulty in comprehending or following through on any but the most basic of tasks. (Tr. 1440). These findings are echoed throughout Plaintiff's treatment at Community Behavioral Health. (Tr. 583-655, 824-998, 1093-1271, 1330-1432).

Ms. Tupa's findings are also consistent with those of Ms. Duncan, Plaintiff's case manager. See 20 C.F.R. § 404.1527(d)(3) (more weight is given to those medical opinions that are "more consistent ... with the record as a whole[.]"). At the administrative hearing, Angela Duncan testified she is Plaintiff's mental health case manager for more than two years. (Tr. 51). Ms. Duncan met with Plaintiff at least once a week individually, sometimes more and Plaintiff attended two group sessions each week. (Tr. 51-52). Ms. Duncan

9

testified Plaintiff can follow very simple one to two step instructions, more than three is difficult for her. (Tr. 53). Plaintiff needs one-on-one instruction with one to two step tasks. (Id). Ms. Duncan testified that she helps Plaintiff with her weekly schedule. (Tr. 54). Plaintiff needs be given verbal instructions, because she cannot understand written instructions. (Tr. 55). Plaintiff needs to be redirected multiple times in one session. (Tr. 56). Ms. Duncan testified Plaintiff would need clarification and redirecting with one to two step tasks in a job setting. (Tr. 58). Ms. Duncan stated that she did not feel Plaintiff could live independently and would recommend she live in an assisted living program where she could be monitored. (Tr. 61).

The ALJ also assigned little weight to Ms. Duncan's testimony. The ALJ noted that Ms. Duncan was not an acceptable medical source and that her testimony was inconsistent with the findings from the neurologist which showed normal mood, affect, speech and behavior. Here testimony was also inconsistent with Dr. Baula, a psychiatrist who also treated Plaintiff at community Behavior Health, who noted that Plaintiff was doing "ok" and her anxiety was "mostly under control." (Tr. 19). Plaintiff' argues that the ALJ' s findings with respect to Ms. Tupa is not supported by substantial evidence. The undersigned agrees.

The undersigned acknowledges that Ms. Tupa and Ms. Duncan are not acceptable medical sources, however, they have both treated Plaintiff regularly over a two-year period. As such, they are in the best position to assess the functional limitations caused by Plaintiff's mental impairments. Notably, "other sources" may be entitled to *more* weight than "acceptable medical sources" under the unique circumstances of a given case. *Woodcock v. Comm'r of Soc. Sec.*, 201 F. Supp. 3d 912, 920 (S.D. Ohio 2016). Such is

the case here.  In light of the foregoing, the undersigned finds that the ALJ erred in failing to adopt the limitations included in the Mental Impairment Questionnaire completed by Ms. Tupa, in July 2017.

Additionally, the ALJ's failure to adopt the prior ALJ decision as required by *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997) is not supported by substantial evidence. As noted by the ALJ, absent evidence of a change in a Plaintiff's condition, an ALJ in a subsequent proceeding is bound by the findings of a previous ALJ.  Id.

In a prior application for Supplemental Security Income benefits filed on July 28, 2003, Plaintiff was found disabled. The ALJ found Plaintiff was unable to perform sustained, competitive work activity of any nature, including sedentary work, because she was limited to low stress tasks with no production quotas, no requirement to maintain concentration on a single task for longer than 15 minutes at a time and no exposure to the general public. (Tr. 78). However, her benefits ceased in June 2009 when her spousal income exceeded the limitations allowed by the SSI program. (Tr. 246, 566). Plaintiff's spouse died on December 29, 2014.  As such, Plaintiff argues that the only reason Plaintiff's SSI benefits were ceased on the prior claim was due to change in income, not because her symptoms had improved. (Tr. 566).  The undersigned agrees.

Here, the ALJ determined that the record contained new and material evidence and therefore *Drummond* did not apply.  (Tr. 10).  Such a finding is not substantially supported.  As outlined by Plaintiff, to show a change in the severity of Plaintiff's condition, the ALJ cites to records from Dr. Privitera, Plaintiff's neurologist. (Tr. 482, 486, 1278, 1283-1284), a diagnostic update (Tr. 1076) and one office note from Plaintiff's

11

psychiatrist. (Tr. 609). However, the evidence of record overwhelming supports the severity of limitation in the area of concentration as found by the prior ALJ. As noted above, the record is replete with difficulty with concentrating/focusing and comprehending; flight of ideas/disordered thoughts (Tr. 620, 870, 895, 1134, 1154, 1421); difficulty following along (Tr. 833, 849, 1115, 1118, 1158, 1167, 1174, 1198, 1204, 1236, 1349, 1401, 1408); difficulty focusing (Tr. 838, 849, 852, 915, 935, 944, 967, 1349); difficulty processing thoughts and questions (Tr. 836, 849, 1115, 1118, 1158, 1186, 1198, 1204, 1236, 1257, 1353, 1366, 1375, 1378, 1408) and difficulty comprehending information (Tr. 911, 1236, 1251, 1375, 1395).

Based on the foregoing, the undersigned finds that the ALJ erred by not adopting the prior ALJ's findings that Plaintiff was disabled.

When, as here, the non-disability determination is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan,* 501 U.S. 89, 100, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991). Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir.1994); *see also Abbott v. Sullivan,* 905 F.2d 918, 927 (6th Cir.1990); *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 782 (6th Cir.1987). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence,

or where the proof of disability is overwhelming. *Faucher,* 17 F.3d at 176; *see also Felisky,* 35 F.3d at 1041; *Mowery v. Heckler,* 772 F.2d 966, 973 (6th Cir.1985). Such is the case here.

Here, proof of disability is overwhelming and a remand will serve no purpose other than delay. As fully explained above, in view of the extensive medical record of evidence of disability and the credible and controlling findings of Ms. Tupa, proof of disability is overwhelming.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be **REVERSED AND REMANDED** to the Commissioner of Social Security for an immediate award of benefits; and that this case be **CLOSED** in this Court.

    *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

NAOMI RUTH STURGILL,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:17-CV-607

Black, J.
Bowman, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).